## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

| | | |
|---|---|---|
| **VB 500 II, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | 4:23-cv-83-BJB |
| **OWENSBORO METROPOLITAN** | ) | |
| **PLANNING COMMISSION, in** | ) | |
| **their official capacities,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR EQUITABLE RELIEF, DECLARATORY JUDGMENT, AND REQUEST FOR EXPEDITED REVIEW

VB 500 II, LLC ("Vertical Bridge"), files this complaint for Equitable Relief, Declaratory Judgment, and Request for Expedited Review against the Owensboro Metropolitan Planning Commission (the "Commission"), in their official capacities, and states as follows:

### I.    INTRODUCTION.

1.    This action arises out of the unlawful denial of Vertical Bridge's application to construct a wireless telecommunications facility on real property located in Whitesville, Daviess County, Kentucky.

2.    Vertical Bridge helps improve wireless telecommunications networks by developing, owning, and leasing wireless communications infrastructure to wireless service providers.

3.     Vertical Bridge assists wireless operators in filling significant gaps in their wireless coverage and capacity so they can deliver the latest available wireless telecommunications technology to customers of wireless service providers and benefit citizens nationwide by providing improved cellular coverage, capacity, and service quality.  Vertical Bridge also benefits local communities by building out and providing support for FirstNet, a single, interoperable network for public safety agencies and first responders established by Congress and operated by AT&T.

4.     Vertical Bridge filed an application seeking approval to construct a monopole tower on a parcel of real property that would allow, as a permitted use, construction of a new telecommunications facility in Daviess County (the "County") to fill a gap in AT&T's wireless coverage and capacity in Whitesville, Kentucky in an area near State Road 54 and Old Leitchfield Road; the gap includes homes in the area.

5.     The Commission denied Vertical Bridge's application.

6.     Vertical Bridge brings this action to require the Commission to permit the building of a new wireless telecommunications facility that will fill a significant gap in cellular phone coverage and capacity.

7.     Vertical Bridge's application was complete and complied with all applicable requirements contained in the Owensboro Metropolitan Zoning

Ordinance (the "Ordinance") and specifically the Cellular Antenna Tower Regulations (the "Regulations").

8.    The Commission's denial of Vertical Bridge's application was not supported by substantial evidence contained in a written record and effectively prohibits the provision of personal wireless services in the vicinity of the proposed facility.

9.    In denying Vertical Bridge's application, the Commission unreasonably discriminated against Vertical Bridge in that it has previously approved applications made by providers of functionally equivalent services.

10.    Accordingly, the Commission's denial of Vertical Bridge's application violates the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) (the "TCA"), and Kentucky Revised Statutes Sections 100.986 and 100.987.  Vertical Bridge is entitled to an order directing the Commission to grant Vertical Bridge's application that will allow for the development of the proposed facility as a permitted use.

11.    Vertical Bridge requests expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## II.    THE PARTIES.

12.    Vertical Bridge is a Delaware limited liability company authorized to transact business in Kentucky.

13.    The Commission is an agency of local government, established by a joint agreement of the City of Owensboro, the City of Whitesville, and Daviess County, Kentucky, pursuant to Kentucky Revised Statutes, Chapter 100, Planning & Zoning Enabling Legislation, and is subject to the jurisdiction of this Court.

### III.   JURISDICTION AND VENUE.

14.    This Court has jurisdiction over this matter pursuant to: 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1367, the TCA, 47 U.S.C. § 332(c)(7)(B)(v), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

15.    Venue is proper in this Court pursuant to 47 U.S.C. § 332(c)(7)(B)(v) and 28 U.S.C. § 1391(b)(2) because Defendant is located in this judicial district, the proposed wireless communications facility would be located in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

### IV.   LEGAL BACKGROUND.

16.    The TCA governs federal, state, and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case. 47 U.S.C. § 332(c)(7)(B).

17.    The purpose of the TCA is to "make available, so far as possible, to all the people of the United States . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communications service with adequate facilities at reasonable

charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

18.    The TCA reduces barriers local governments impose to defeat or delay the installation of wireless communications facilities and protects against irrational, unsupported or unsubstantiated decisions by local authorities.  *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty.*, 546 F.3d 1299, 1306 (10th Cir. 2008) (quoting *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 57 (1st Cir. 2001) (abrogated on other grounds by *T-Mobile S., LLC v. County of Roswell, Georgia*, 135 S. Ct. 808 (2015)).

19.    In enacting the TCA, Congress considered the potential conflict between state and local governmental regulation of the placement and aesthetic effects of wireless telecommunications facilities and the national need for rapid deployment of economical and effective wireless services.  The TCA imposes significant restraints on local governmental actions that might limit the provision of wireless telecommunications services, while preserving state and local governmental authority over decisions regarding the "placement, construction, and modification of wireless facilities."  47 U.S.C. § 332(c)(7)(A).

5

20.     The TCA specifically prohibits state and local governing entities from taking actions that effectively prohibit wireless providers from providing service. 47 U.S.C. § 332(c)(7)(B)(i).

21.     The TCA states, in pertinent part, that state and local government regulation of personal wireless service facilities:

(I)     shall not unreasonably discriminate among providers of functionally equivalent services; and

(II)    shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(I-II).

22.     The TCA requires that state and local governing bodies put a denial of a request for a wireless services facility in writing supported by substantial evidence in a written record.

23.     The relevant language provides:

(iii)   Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities **shall be in writing and supported by substantial evidence contained in a written record**.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

24.     The TCA provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [the TCA] may, within 30 days after such action or

failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

25.    Appeals under Section 332(c)(7)(B)(v) are to be heard and adjudicated on an expedited basis. *BellSouth Mobility Inc. v. Gwinnett County,* 944 F. Supp. 923, 929 (N.D. Ga. 1996) (courts shall act expeditiously in deciding appeals brought under section 332(c)(7)(B)(v)).

26.    An injunction ordering issuance of a permit is an appropriate remedy for violation of the TCA. *Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210, 1222 (11th Cir. 2002).

## V.    FACTS.

### A.    Background.

27.    Vertical Bridge develops wireless communications facilities to allow wireless carriers to provide commercial mobile radio services, personal and advanced wireless services, and other telecommunications services, as those terms are defined under federal law.

28.    To advance the national policies of the TCA established by 47 U.S.C. § 151 and the Federal Communications Commission, Vertical Bridge constructs towers and other wireless facilities to allow wireless carriers to create and maintain networks of sites consisting of antennas and communications equipment designed to send and receive radio signals.

29.     Wireless carriers employ radio frequency ("RF") engineers to determine where a new wireless facility is required that employ sophisticated proprietary techniques to conduct propagation studies to identify where sites need to be located.

30.     AT&T determined that it has a significant gap in its ability to provide reliable service in the County and specifically in an area near Highway 31; the gap includes a residential area in Whitesville, Kentucky in an area near State Road 54 and Old Leitchfield Road; the gap includes homes in the area.

31.     AT&T further determined that there was a need to increase capacity to allow existing sites in the area to operate more reliably and efficiently.

32.     In order to improve AT&T's wireless telecommunications network, Vertical Bridge sought to develop a new wireless telecommunications facility in this area.

33.     AT&T's engineers identified a search area and Vertical Bridge sought to develop a wireless communications facility somewhere within that area to remedy AT&T's significant gap in service.

34.     There were no existing towers or other large structures within the search area upon which to place AT&T's antennas.  Because there were no suitable existing towers in the area, Vertical Bridge was forced to identify potential sites for a new facility.

8

35.     Vertical Bridge investigated suitable properties within the area that were appropriate for a wireless communications facility.  An appropriate candidate would have to fill the gap in AT&T's service, be leasable, and be buildable.

36.     Vertical Bridge identified the property located at 9467 Herbert Road, Whitesville, Kentucky 42378 (the "Parent Tract") as a potential location for the proposed facility.

37.     The owners of the Parent Tract were willing to and did enter into a lease with Vertical Bridge to allow development of the proposed facility on the Parent Tract.

38.     The proposed wireless telecommunications facility would be located within the Parent Tract and consist of a 75'x75' square lease of for the location of the tower and an access road (the "Proposed Site").

39.     The Proposed Site is the only property in the search ring that would allow Vertical Bridge to develop a telecommunications facility that would close the existing gap in coverage and capacity in AT&T's network.

40.     The Proposed Site is the only portion of the Parent Tract where the owners of the Parent Tract would allow the placement and construction of the telecommunications facility.

41.    The Regulations provide that monopole cellular antenna towers, like the one proposed here by Vertical Bridge, are permitted in any zone.  Regulations at § 20-5(a).

42.    The Parent tract is zoned A-R, Rural Agricultural.

43.    The Proposed Site is critical for AT&T to develop a seamless wireless telecommunications network and to fill a significant gap in coverage and capacity in the area.

**B.    <u>The Application</u>.**

44.    Vertical Bridge filed an application and submitted requested supporting documents seeking to construct a monopole cellular antenna tower on the Proposed Site (the "Application").

45.    Vertical Bridge proposed to develop a 195' telecommunications tower with a four-foot lightning rod on the Proposed Site.  The height was determined by AT&T to be the minimum needed to address its coverage and capacity issues in the area of the Proposed Site.

46.    The Application complied with all of procedures, requirements, and standards required by the Ordinance.

47.    Vertical Bridge was never provided with notice that the Application was incomplete, deficient, or otherwise failed to meet the requirements of the Ordinance.

48.    The Commission's staff presented a report affirming that all materials of a complete application were submitted in accordance with the Ordinance and finding that the Proposed Site was in compliance with the design criteria of the Ordinance, would improve wireless telecommunications service for the community, and would promote the goal of the Comprehensive Plan to encourage collocation in order to minimize the number of telecommunications towers.

**D.    <u>First Commission Hearing</u>.**

49.    On May 11, 2023, the Commission held a hearing on the Application.

50.    At the hearing, Commission members asked various questions about the proposed facility.  Vertical Bridge's representative responded to the questions and directed the Commission members to the documents and information provided as part of the Application.

51.    One resident raised concerns regarding the Proposed Site.  He expressed his personal concerns regarding aesthetics and personal safety (from an unlikely tower collapse of the tower) and speculated the proposed facility would impact his property values.

52.    Vertical Bridge provided information the facility would have natural screening provided by 100' tall trees, pointed out design characteristics concerning the unlikely event of a tower collapse, and how the tower would be constructed.

53.    Regardless, the Commission voted to postpone a vote on the application and asked Vertical Bridge to provide additional information in response to their questions and the resident's concerns.

54.    Following the May 11, 2023 Commission hearing, Vertical Bridge provided additional information to supplement the Application consisting of an engineer's opinion letter regarding the safety of the tower, tower and foundation design plans, and a survey of the Proposed Site and the immediately surrounding area.

**E.    Second Commission Hearing**

55.    On June 8, 2023, the Commission held a second hearing on the Application.

56.    Again, the Application and supporting documents met the criteria of the Ordinance.

57.    Vertical Bridge was not provided any information that alleged information was missing or that the Application and supporting information failed to comply with the Ordinance.

58.    At the second Commission hearing, Vertical Bridge provided evidence that the Proposed Site was the only site in the search area that could meet both AT&T's desired coverage and capacity goals and spoke about the objectives

to assist with capacity issues on two other AT&T sites and to provide increased coverage and capacity to the area.

59.    Vertical Bridge presented evidence that it had evaluated other sites in the area and that the Proposed Site was the only site available on which a landowner was willing to allow construction of the proposed facility, was buildable, and would provide the coverage and capacity needed to develop AT&T's network and close a significant gap in coverage and capacity.

60.    Vertical Bridge presented evidence that, despite equipment on tower sites around the coverage area, a gap exists, the Proposed Site was needed to close the gap in AT&T's wireless telecommunications network.

61.    Vertical Bridge offered evidence the proposed tower would be safe that the proposed construction would not impact adjoining properties.

62.    Vertical Bridge's Application met all of the Ordinance requirements.

63.    Vertical Bridge's substantial evidence supported granting the Application.

64.    Following the second Commission hearing, one of the Commission members made a motion to deny the Application.  The motion passed on a 5-3 vote.

65.    On June 9, 2023, the Commission sent Vertical Bridge a written denial (the "Written Denial").  A copy of the Written Denial is attached hereto as **Exhibit 1**.  The substance of the Written Denial states in its entirety:

> Pursuant to KRS 100.987, the Owensboro Metropolitan Planning Commission (OMPC) and its administrative staff have reviewed the Uniform Application for a communications tower to be located at 9767 Herbert Road in Daviess County, Kentucky.
>
> At its regularly scheduled meeting on June 8, 2023, the OMPC denied the application and found it to be incomplete.   At the May 11, 2023 OMPC meeting the Planning Commissioners had concerns related to the close proximity of the proposed tower to the residence on the adjoining property at 9453 Herbert Road.   Commission members requested information showing how the coverage signal would be affected if the proposed cellular communication tower were relocated to a different location on the parent parcel, further from the residence on the adjoining property.  The requested information was not provided at the June 8, 2023 OMPC meeting.  So, in the absence of that information, the OMPC voted to deny the application.  Should you have any questions in regards to this matter, please feel free to contact Melissa Evans at (270) 687-8650.

66.    In denying the Application, the commission did not rely on any evidence.

67.    The transcript from the June 8, 2023 Commission meeting, where the Application was denied, has not made available to the public.

## VI.    **Claims**.

68.    There was no evidence supporting denial of the Application much less the required substantial evidence.

69.    Denial of the Application constitutes an effective prohibition of wireless services because Defendant has denied Vertical Bridge the ability to provide needed improvements to wireless telecommunications networks in the County.  47 U.S.C. § 332(c)(7)(B)(i)(II).

70.   In denying the Application, the Commission unreasonably discriminated against Vertical Bridge in that it has previously approved the placement and construction of other wireless facilities by other providers that were similar to Vertical Bridge's proposed facility and that also met all of the requirements of the Ordinance.

71.   Denial of the Application conflicts with the TCA which is designed to: "(1) promote the safety of life and property; (2) improve the efficiency of spectrum use and reduce the regulatory burden upon spectrum users, based upon sound engineering principles, user operational requirements, and marketplace demands; [and] (3) encourage competition and provide services to the largest feasible number of users . . . ." 47 U.S.C. § 332(a) (1)-(3).

72.   Denial of the Application is contrary to the intent of the TCA, which is "to promote competition and reduce regulation in order to secure lower process and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." TCA, S. 652, 104th Cong. (2nd Sess. 1996).

73.   A present and actual controversy exists between Vertical Bridge and Defendants regarding denial of the Application in violation of the TCA.

74.   Vertical Bridge has exhausted all of its administrative remedies.

**COUNT ONE**
**Failure to Comply with the**

## **Supported by Substantial Evidence Requirement**

75.    Vertical Bridge incorporates by reference the allegations set forth in Paragraphs 1-74 above as if set forth fully herein.

76.    The TCA states in pertinent part:

(iii)    Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and **supported by substantial evidence** contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

77.    Vertical Bridge presented substantial evidence in support of the Application.

78.    The Application complied with every aspect of the Ordinance.

79.    Vertical Bridge addressed all of the grounds for approval of the Application.

80.    Defendant never informed Vertical Bridge that the Application failed to comply with the requirements of the Ordinance.

81.    Defendant's denial of the Application fails to meet the "supported by substantial evidence contained in a written record" requirement of the TCA because there is no evidence, much less substantial evidence, supporting denial of the Application.

WHEREFORE, Vertical Bridge prays that this Court hold an expedited hearing, issue an injunction holding that Defendants violated the TCA, and order

Defendants to approve the Application and issue all approvals necessary to allow construction of the proposed telecommunications tower.  Vertical Bridge further prays for such further, other, or different relief as the Court deems appropriate under the circumstances.

**COUNT TWO**
**Unlawful Prohibition of the**
**Provision of Personal Wireless Services**

82.    Vertical Bridge incorporates by reference the allegations set forth in Paragraphs 1-74 above as if set forth fully herein.

83.    The TCA specifically provides, in pertinent part, that state and local government regulation of personal wireless service facilities:

(II)    **shall not prohibit or have the effect of prohibiting** the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(II) (emphasis added).

84.    Placement of a wireless telecommunications facility like the one proposed by the Application is permitted in all zoning classifications including the classification assigned to the Parent Tract.

85.    Vertical Bridge complied with all of the requirements necessary for approval of the Application.

86.    An effective prohibition occurs where a local governing body materially inhibits a wireless service provider's ability to engage in any variety of activities related to its provision of wireless services.  Not only when filling a gap

in coverage, but also when densifying a wireless network, improving capacity, or otherwise improving service capabilities.[1]

87.    An effective prohibition of services in violation of the TCA may occur where a local government action restricts new services or the improvement of existing services.

88.    Vertical Bridge provided evidence, presented in the Application and at the Commission meeting, that only the Proposed Site would meet AT&T's coverage and capacity requirements.

89.    The Application was based upon sound engineering principles, user operational requirements, and marketplace demands.

90.    Defendant prohibited Vertical Bridge from filling a gap in AT&T's coverage, densifying a wireless network, improving capacity, or otherwise improving service capabilities.

91.    Defendant restricted new services and/or the improvement of existing services.

92.    Denial of the Application prevents Vertical Bridge from constructing a wireless communications tower on the Proposed Site.

---

[1] *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, FCC 18-133 (Sept. 26, 2018), available at https://docs.fcc.gov/public/attachments/FCC-18-133A1.pdf (last visited March 9, 2023).

93.    Denial of the Application has the effect of prohibiting the provision of wireless services in the area of the Proposed Site in violation of the TCA.

WHEREFORE, Vertical Bridge prays that this Court hold an expedited hearing, issue an injunction holding that Defendants violated the TCA, and enter an order granting the Application and all approvals necessary to allow construction of the proposed telecommunications tower on the Proposed Site.  Vertical Bridge further prays for such further, other, or different relief as the Court deems appropriate under the circumstances.

### COUNT THREE
### Unreasonable Discrimination Among Providers of
### Functionally Equivalent Services

94.    Vertical Bridge incorporates by reference the allegations set forth in Paragraphs 1 - 74 above as if set forth fully herein.

95.    The TCA specifically provides, in pertinent part, that state and local government regulation of personal wireless service facilities:

(I)    shall not unreasonably discriminate among providers of functionally equivalent services . . . .

47 U.S.C. § 332(c)(7)(B)(i)(I).

96.    Vertical Bridge met the requirements of the Ordinance concerning telecommunications towers.

97.    Vertical Bridge offered evidence that the proposed facility was necessary to offer wireless telecommunications service in the area that it would not otherwise be able to offer without approval of the Application.

98.    Vertical Bridge complied with all of the requirements necessary for approval of the Application.

99.    Vertical Bridge demonstrated that only the proposed site would meet the coverage and capacity requirements needed in the area.

100.    The Commission has previously approved functionally equivalent services in the County and in the other areas under its jurisdiction.

101.    The intentional actions of the Commission in denying the Application unreasonably discriminated against Vertical Bridge.

WHEREFORE, Vertical Bridge prays that this Court hold an expedited hearing, issue an injunction holding that Defendants violated the TCA, and enter an order granting the Application and all approvals necessary to allow construction of the proposed telecommunications tower on the Proposed Site.  Vertical Bridge further prays for such further, other, or different relief as the Court deems appropriate under the circumstances.

## COUNT FOUR
## Violation of Kentucky Statute Related
## To Regulation of Cellular Antenna Towers

102.   Vertical Bridge incorporates by reference the allegations set forth in Paragraphs 1 - 74 above as if set forth fully herein.

103.   Kentucky Revised Statutes Section 100.986 prohibits local planning commissions in Kentucky from taking certain actions with respect to applications to construct cellular antenna towers.

104.   Section 100.986(5) prohibits planning commissions from requiring the submission of application materials in addition to those required by Kentucky Revised Statutes Sections 100.9865 and 100.987, unless agreed by both parties.

105.   Vertical Bridge's application contained all of the materials required by Kentucky Revised Statutes Sections 100.9865 and 100.987.

106.   Kentucky Revised Statute Section 100.987 provides other requirements for applications and provides the parameters by which local planning commissions may review applications to construct cellular antenna towers.

107.   Vertical Bridge's application met all of the requirements of Kentucky Revised Statutes Sections 100.986 through 100.987, as well as all requirements of the Ordinance.

108.   The Commission's denial of the Application violated Kentucky Revised Statutes Sections 100.986 and 100.987.

WHEREFORE, Vertical Bridge prays that this Court hold an expedited hearing, issue an injunction holding that Defendants violated Kentucky law, and enter an

order granting the Application and all approvals necessary to allow construction of the proposed telecommunications tower on the Proposed Site. Vertical Bridge further prays for such further, other, or different relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*/s/ Nora A. Koffman*
Nora A. Koffman
602 Sevier Street, Suite 300
Johnson City, TN 37604
(423)928.0181(phone)
(423)928.5694 (fax)
nkoffman@bakerdonelson.com

*Attorneys for Plaintiff*